# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| ROGER JOSEPH HOFFERT, JR., <br><br> Plaintiff, <br><br> vs. <br><br> JEREMY WESTENDORF, CHASTITY SULLIVAN, KIMBERLY A. GRIFFITH, TONY THOMPSON, PHILLIP WENDLING, and BETH SKINNER, <br><br> Defendants. | No. 19-CV-2063-CJW-MAR <br><br> **ORDER** |

## I.  INTRODUCTION

This matter is before the Court on defendant Beth Skinner's ("Skinner") and defendants Jeremy Westendorf ("Westendorf"), Chastity Sullivan ("Sullivan"), Kimberly A. Griffith ("Griffith"), Phillip Wendling ("Wendling"), and Tony Thompson's ("Thompson") (collectively "defendants") motions to dismiss filed on May 18, 2020, and May 28, 2020, respectively. (Docs. 38 & 40). Plaintiff timely filed resistances to both motions on June 1, 2020, and June 10, 2020, respectively. (Docs. 41 & 43). On June 17, 2020, defendants, except Skinner, timely filed a reply. (Doc. 48).

For the following reasons, the Court **grants** defendants' motions and this case is **dismissed with prejudice**.

## II.  RELEVANT BACKGROUND

In his Second Amended Complaint (Doc. 36), plaintiff states the following facts: On August 3, 2017, plaintiff was arrested and detained at the Black Hawk County Jail

pursuant to a bench warrant relating to an assault charge. (*Id.*, at 3). Plaintiff had a valid prescription for Seroquel which was dispensed to him by staff at the Black Hawk County Jail. (*Id.*). That same day, plaintiff was charged by criminal complaint with introducing a controlled substance into a detention facility in violation of Iowa Code Section 719.7. (*Id.*). On January 4, 2018, plaintiff pleaded guilty to this offense based on allegedly deficient advice from counsel. (*Id.*, at 5). Plaintiff was sentenced to three years' probation with a five-year suspended prison sentence. (*Id.*, at 6). On March 30, 2018, the Iowa district court revoked plaintiff's probation and imposed his suspended prison sentence. (*Id.*). On September 23, 2019, plaintiff won his postconviction relief action based on a finding that Seroquel was not a controlled substance. (*Id.*, at 7). On December 13, 2019, all charges relating to plaintiff's possession of Seroquel were dismissed. (*Id.*). Defendants here are various employees of the Black Hawk County Attorney's Office, Black Hawk County Sheriff's Office, and the Iowa Department of Corrections ("IDOC") involved in defendant's arrest, prosecution, and imprisonment for introducing a controlled substance into a detention facility. (*Id.*, at 2, 4-7).

On October 4, 2019, plaintiff filed a pro se Complaint against defendants in this Court. (Doc. 1-1). After requesting and receiving an extension of time (Docs. 7 & 8), plaintiff filed his Amended Complaint on February 11, 2020, with the assistance of counsel (Doc. 9). On March 18, 2020, and April 6, 2020, defendants filed two separate motions to dismiss. (Docs. 16 & 22). After receiving leave (Doc. 33), plaintiff filed a Second Amended Complaint (Doc. 36).

In his Second Amended Complaint, plaintiff asserts six causes of action: (1) malicious prosecution under Iowa law against defendants Westendorf, Sullivan, Griffith, and Wendling in their individual and official capacities, (2) a Title 42, United States Code, Section 1983 violation of his substantive due process rights under the Fifth and Fourteenth Amendments against the same parties, (3) abuse of process under Iowa

2

law against the same parties, (4) a Section 1983 claim of false imprisonment in violation of the Fifth and Fourteenth Amendments against Skinner and Thompson in their individual and official capacities, (5) a Section 1983 claim of cruel and unusual punishment in violation of the Eighth Amendment against Skinner and Thompson, and (6) intentional infliction of emotional distress ("IIED") under Iowa law against all defendants in their individual and official capacities. (*Id.*, at 7-10).

### III. APPLICABLE LAW

#### A. Motions to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nevertheless, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that relies on "naked assertion[s]" devoid of "further factual enhancement," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 557.

Before filing an answer, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must also grant "all reasonable inferences" from the pleadings "in favor of the nonmoving party." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual

3

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility is not equivalent to probability, but it is something "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The question . . . is not whether [a plaintiff] might at some later stage be able to prove [its claims]; the question is whether [a plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012).

### B. *Qualified Immunity*

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and internal quotation marks omitted). At the motion to dismiss stage, qualified immunity requires courts to consider (1) whether the facts alleged make out a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of the alleged violation. *Id.*, at 232.

The plaintiff bears the burden of showing that the law was clearly established. *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted). The absence of factually similar authority establishing a constitutional right is often fatal. *Moore-Jones v. Quick*, 909 F.3d 983, 985 (8th Cir. 2018) (citing *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). Although there need not be a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation and quotation marks

4

omitted). "If the law did not put the official on notice that his conduct would be clearly unlawful, a motion to dismiss based on qualified immunity is appropriate." *Risdal v. Smith*, No. 11-CV-4035-DEO, 2013 WL 12073224, at *4 (N.D. Iowa June 20, 2013) (overruled on other grounds) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

### C. Absolute Prosecutorial Immunity

"To advance the practical administration of government, the law recognizes certain government officials should be absolutely immune from suit for conduct relating to the discharge of certain government functions." *Venckus v. City of Iowa City*, 930 N.W.2d 792, 800 (Iowa 2019). Iowa law recognizes "judicial process immunity" which protects certain government officials from liability "for conduct intimately associated with the judicial phase of the criminal process." *Id.* (citation and internal quotation marks omitted). Judicial process immunity extends to certain actions of prosecutors. *Minor v. State*, 819 N.W.2d 383, 394 (Iowa 2012). The Iowa Supreme Court has extended absolute prosecutorial immunity to common law torts, Iowa constitutional claims, and federal Section 1983 claims. *Venckus*, 930 N.W.2d 810–33 (Appel, J., concurring) (discussing the history of prosecutorial immunity). "The Iowa Supreme Court has applied essentially identical principles of [federal] absolute prosecutorial immunity to state-law claims." *Aguilera v. Wright Cty.*, 50 F. Supp. 3d 1057, 1065 (N.D. Iowa 2014) (citation omitted).

"Absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Stockley v. Joyce*, No. 19-1573, 2020 WL 3493522, at *3 (8th Cir. June 29, 2020) (citation and alteration omitted). A prosecutor is not absolutely immune from suit when taking investigatory or administrative actions. *Minor*, 819 N.W.2d at 395. Prosecutors are immune, however, for acts within their prosecutorial functions. *Id.*, at 394. Prosecutorial functions include "initiating a prosecution and [ ] presenting the State's case," *id.*, at 394, which encompasses "the

5

preparing and filing of trial information[s] and motions" *id.* (internal quotation marks and citations omitted). Likewise, many of a prosecutor's strategic and discretionary decisions made while prosecuting a case, including the decision to continue a prosecution, are prosecutorial functions covered by this immunity. *See Venckus*, 930 N.W.2d at 804-05. Absolute immunity protects all prosecutorial functions regardless of motive or intent as "immunity applies even when the [official] is accused of acting maliciously and corruptly because as a matter of policy it is in the public's best interest that [officials] should exercise their function without fear of consequences and with independence." *Id.*, at 804 (alterations in original) (citation omitted).

Complaints initiating a criminal prosecution are also covered by absolute prosecutorial immunity so long as they fall within a prosecutorial role rather than an investigatory role. *See Aguilera*, 50 F. Supp. 3d at 1065. A prosecutor is not protected by absolute immunity when the prosecutor vouches "for the truth of the facts set forth in the certification under penalty of perjury" by filing a supporting affidavit to establish grounds for issuing an arrest warrant. *See Kalina v. Fletcher*, 522 U.S. 118, 121 (1997); *see also Kohl v. Casson*, 5 F.3d 1141, 1146 (8th Cir. 1993) ("[W]here the prosecutor switches functions from presenting the testimony of others to vouching, of his own accord, for the truth of the affidavits presented to the judicial officer, the prosecutor loses the protection of absolute immunity[.]"). An arrest warrant's evidentiary component is an essential predicate in finding probable cause. *Kalina*, 522 U.S. at 130–31. Even when the affiant is a lawyer, "the only function that [the prosecutor] performs in giving sworn testimony is that of a witness." *Id.*, at 131. When a prosecutor does not act as a witness, however, the prosecutor is covered by absolute immunity for submitting the trial information and minutes of testimony. *See Aguilera*, 50 F. Supp. 3d at 1066. Even when there is an allegation that a criminal prosecution was initiated without probable cause, absolute prosecutorial immunity applies. *Id.*

6

## IV. ANALYSIS

The Court will first examine Skinner's Motion to Dismiss as to both qualified immunity and the merits before turning to Westendorf, Sullivan, Griffith, Wendling, and Thompson's Motion to Dismiss as to both absolute prosecutorial immunity and the merits.

### A. *Defendant Skinner's Motion to Dismiss*

Skinner, the Director of the IDOC, bases her motion to dismiss on Federal Rule of Civil Procedure 12(b)(6). (Doc. 38, at 1). Skinner asserts she cannot be held liable for false imprisonment, cruel and unusual punishment, or IIED merely because plaintiff was imprisoned following his conviction and sentencing for introducing a controlled substance into a detention facility even though plaintiff's conviction was later reversed. (*Id.*). First, Skinner asserts plaintiff's imprisonment was not false, i.e. plaintiff was imprisoned pursuant to a valid order and was promptly released when his conviction was overturned. (Doc. 38-1, at 5–6). Second, Skinner argues she did not subject plaintiff to cruel and unusual punishment because plaintiff was lawfully detained and it was the court's decision to imprison plaintiff, not Skinner's. (*Id.*, at 6). Third, Skinner asserts there is no evidence she personally caused plaintiff to suffer any distress. (*Id.*, at 6–7). Last, Skinner argues she is entitled to qualified immunity. (*Id.*, at 4 n.2, 7–9).

In his resistance, plaintiff asserts his claims are proper. First, plaintiff argues Skinner is not entitled to qualified immunity because it was apparent that she was imprisoning an innocent person. (Doc. 41-1, at 10–11). Second, plaintiff argues he was not imprisoned as a result of a valid judgment because there was no factual basis for his guilty plea. (*Id.*, at 6–7). Thus, plaintiff concludes his incarceration constituted false imprisonment, cruel and unusual punishment, and IIED for which Skinner, as the Director of the IDOC, is liable. (*Id.*). Last, plaintiff argues Skinner is a proper defendant because she wrongfully incarcerated him. (*Id.*, at 8–9).

7

As to qualified immunity, plaintiff never alleges Skinner kept plaintiff in custody after a court ordered plaintiff's release. *See Davis v. Hall*, 375 F.3d 703 (8th Cir. 2004). Plaintiff asserts only that his incarceration was unlawful, involuntary, and not supported by probable cause. (Doc. 36, at 10–11). That his conviction was later found to be invalid has no retroactive effect on the validity of his imprisonment. The Court finds plaintiff fails to assert facts establishing a violation of a constitutional right. Even if such facts were alleged, the Court would still find Skinner is entitled to qualified immunity. Plaintiff has not met his burden to clearly establish that prison directors are constitutionally required to investigate an inmate's conviction and release that inmate if the director is not satisfied in the conviction's legal basis. Any argument that Skinner engaged in wrongful conduct is not plausibly supported by the facts in the Second Amended Complaint. Similarly, any argument that Skinner was not acting within the scope of her employment is unavailing. Skinner has no personal power to imprison convicted persons. Thus, the Court finds Skinner is entitled to qualified immunity on all of plaintiff's claims.[1]

As to the merits, all of plaintiff's claims against Skinner turn on the validity of his imprisonment. Under Iowa law, false imprisonment requires proof of involuntarily and unlawful detention or restraint. *Valadez v. City of Des Moines*, 324 N.W.2d 475, 477 (Iowa 1982).[2] Under the Eighth Amendment, cruel and unusual punishment occurs only when a prison official by act or omission, with a sufficiently culpable state of mind,

---

[1] Skinner also briefly claims she is entitled to sovereign immunity because she was also sued in her official capacity. (Doc. 38-1, at 4 n.2). In light of the Court's finding of qualified immunity, it need not examine sovereign immunity here. The Court also need not analyze her alternative basis for dismissal under Federal Rule of Civil Procedure 12(b)(1). (*Id.*, at 2).

[2] Plaintiff cites Section 1983 as the basis for his false imprisonment claim. "[F]alse imprisonment is a state-law claim that is not actionable under § 1983." *Rinne v. City of Beatrice*, No. 4:18CV3037, 2018 WL 4492227, at *7 (D. Neb. Sept. 19, 2018) (citing *King v. Beavers*, 148 F.3d 1031, 1034 (8th Cir. 1998)).

8

seriously deprives an inmate in some way which results in the "the unnecessary and wanton infliction of pain." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and quotation marks omitted). Under Iowa law, IIED requires proof of intentional or reckless outrageous conduct by a defendant which actually and proximately causes a plaintiff to suffer severe emotional distress. *Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 26 (Iowa 2014). Here, Skinner's only alleged conduct is overseeing the IDOC while plaintiff was incarcerated. (Doc. 36, at 2, 10–12). Thus, the Court must assess the lawfulness, culpability, and outrageousness of plaintiff's imprisonment in light of the fact that his conviction was later overturned.

Plaintiff was charged, pleaded guilty, and sentenced. As a result, while in the custody of the IDOC, plaintiff was lawfully imprisoned. Thus, his imprisonment here cannot serve as the basis for a false imprisonment claim. Plaintiff's imprisonment was also not cruel or unusual. False imprisonment standing alone does not violate the Eighth Amendment, *Rinne*, 2018 WL 4492227, at *7, and plaintiff alleges no facts indicating he was punished inappropriately in any way or that anyone, much less Skinner, had a culpable state of mind in doing so. Further, plaintiff does not allege Skinner was deliberately indifferent to any constitutional violation. As to plaintiff's IIED claim, the Court finds, as a matter of law, that Skinner's conduct in confining plaintiff pursuant to a court order is not outrageous conduct. In short, being imprisoned pursuant to a valid judgment which was later overturned does not retroactively render plaintiff's incarceration unlawful, cruel, or outrageous.

Notably, Skinner also cannot be held liable for holding plaintiff in custody because she did not have the authority to release him. *See Dahl v. Weber*, 580 F.3d 730, 734 (8th Cir. 2009). As the Director of the IDOC, she was required by law to keep plaintiff in custody until he served his full sentence or was "pardoned or otherwise legally released." IOWA CODE § 903A.5(1). It is also not Skinner's duty to investigate every

9

inmate's offense to ensure their conviction's validity. The Director is required to investigate only if he or she is notified of a questionable commitment. IOWA CODE § 904.502. "Absent such duty and authority, the general rule is that officials are not 'required by the Constitution to investigate independently every claim of innocence.'" *Dahl*, 580 F.3d at 734 (quoting *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979)). Plaintiff has not alleged facts plausibly showing Skinner violated any duty owed to him.[3]

Thus, the Court finds plaintiff has failed to state any claim against Skinner upon which relief can be granted and therefore **grants** Skinner's motion to dismiss.

### B. *Defendants Westendorf, Sullivan, Griffith, Wendling, and Thompson's Motion to Dismiss*

Defendants Westendorf, Sullivan, Griffith, Wendling, and Thompson, the five remaining defendants, base their motion to dismiss on Federal Rule of Civil Procedure 12(b)(6). (Doc. 40, at 2–3). First, defendants Westendorf, Sullivan, and Griffith—all prosecutors with the Black Hawk County Attorney's Office—assert they are entitled to absolute prosecutorial immunity. (Doc. 40, at 7–9). Second, these defendants assert plaintiff's claims also fail on the merits. The Court will first examine Westendorf,

---

[3] Skinner also argues in a footnote that plaintiff failed to exhaust administrative remedies under the Iowa Tort Claims Act ("ITCA") on his IIED claim. (Doc. 38-1, at 7 n.3). IIED claims can be brought under the ITCA. *Wilson v. Lamp*, 142 F. Supp. 3d 793, at 810 (N.D. Iowa 2015) (citation omitted). If defendant failed to exhaust such remedies, this Court lacks subject matter jurisdiction on his IIED. *See McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010). Given that the issue of exhaustion is only briefly mentioned in Skinner's brief and the Court's analysis above, it need not rule on the issue of exhaustion. The Court notes, however, that its dismissal without prejudice of this claim is valid only to the extent it has subject matter jurisdiction to issue such a ruling.

10

Sullivan, and Griffith's entitlement to absolute prosecutorial immunity before examining the merits of plaintiff's claims.[4]

### 1. *Absolute Prosecutorial Immunity as to Westendorf, Sullivan, and Griffith*

Plaintiff asserts claims of malicious prosecution, a substantive due process violation, abuse of process, and IIED against Westendorf, Sullivan, and Griffith, who are all prosecutors for Black Hawk County. (Doc. 36, at 7–10, 12). Plaintiff alleges Westendorf falsely prosecuted him and that "Westendorf either knew or should have known that Seroquel was not a controlled substance and not contraband as defined by Iowa law at the time he filed the trial information and minutes of testimony." (*Id.*, at 4). Plaintiff asserts defendant Westendorf intentionally or recklessly prosecuted him without probable cause. (*Id.*, at 5). Plaintiff argues Sullivan, while representing the State at plaintiff's plea hearing, falsely accused him of committing a crime that did not exist under Iowa law. (*Id.*). Plaintiff asserts Griffith, "[d]uring the Postconviction Relief proceedings," falsely represented to the court that his conviction was valid despite clear law to the contrary. (*Id.*, at 7). In response, Westendorf, Sullivan, and Griffith argue they are entitled to absolute prosecutorial immunity. (Doc. 40, at 7–9). Plaintiff counters that they are not entitled to such immunity because there was no jurisdiction to prosecute him for a crime he asserts did not exist. (Doc. 43, at 6–10).

Plaintiff improperly relies on *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978), wherein the Supreme Court held that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority;

---

[4] Westendorf, Sullivan, Griffith, Wendling, and Thompson's motion provides the standard for qualified immunity, but fails to argue qualified immunity applies later in the brief. (Doc. 40, at 9). It at best implies qualified immunity applies to some defendants here. (*Id.*). In response, plaintiff requests additional briefing should the Court rule on qualified immunity as to these defendants. (Doc. 43, at 7). In light of this confusion, the Court will forego analyzing qualified immunity at this stage.

11

he will be subject to liability only when he has acted in the '*clear absence of all jurisdiction*.'" (emphasis added) (citation omitted). The *Stump* Court clarified the meaning of "clear absence of all jurisdiction" by saying,

> [T]he Court [previously] illustrated the distinction between lack of jurisdiction and excess of jurisdiction with the following examples: if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Id.*, at 357 n.7. Like judges, "[p]rosecutors must act 'clearly outside their jurisdiction' (i.e., pursuant to their investigatory duties) to lose the defense of absolute immunity." *Webster v. Gibson*, 913 F.2d 510, 513–14 (8th Cir. 1990).

County prosecutors in Iowa are required to "diligently enforce or cause to be enforced in the county, state laws and county ordinances, violations of which may be commenced or prosecuted in the name of the state, county, or as county attorney[.]" IOWA CODE § 331.756(1). Westendorf, Sullivan, and Griffith charged plaintiff with a violation of Iowa Code Section 719.7. That plaintiff's conviction was eventually overturned does not retroactively cause defendants' actions to be outside their jurisdiction. Plaintiff was not prosecuted for a crime that does not exist; he was prosecuted for a crime of which he was ultimately found not guilty. These defendants were acting within their jurisdiction when they charged plaintiff with an offense under Iowa law in an Iowa district court. Thus, the Court finds Westendorf, Sullivan, and Griffith had jurisdiction to prosecute plaintiff for the offense at issue.

Plaintiff has not alleged any facts showing these defendants were involved in plaintiff's case before the filing of the criminal complaint. *See Aguilera*, 50 F. Supp. 3d 1057. Plaintiff has not pleaded any facts that support an allegation that prosecutors were

12

performing investigative or administrative acts that might be outside their absolute prosecutorial immunity. All of plaintiff's allegations here are based on these defendants' prosecutorial functions. Westendorf's filing of trial information and minutes of testimony was within prosecutorial conduct. *See Minor*, 819 N.W.2d at 394. There are no allegations that Westendorf was acting as a complaining witness when he filed this information. Sullivan representing the State at plaintiff's plea hearing also falls within prosecutorial conduct. *See id*. Likewise, Griffith's decision to continue prosecution was also within her prosecutorial discretion. *See Venckus*, 930 N.W.2d at 804. In sum, Westendorf, Sullivan, and Griffith are entitled to absolute immunity because all of plaintiff's allegations are based on prosecutorial conduct within their jurisdiction.

Thus, the Court finds plaintiff has failed to state any claim against Westendorf, Sullivan, and Griffith upon which relief can be granted and therefore **grants** defendants' motion to dismiss as to these three defendants.

### 2. *Merits of Plaintiff's Remaining Claims*

In the alternative to prosecutorial immunity, the Court will discuss the merits of plaintiff's claims as they relate to the five remaining defendants; Westendorf, Sullivan, Griffith, Wendling, and Thompson.

#### a. *Malicious Prosecution*

To state a claim for malicious prosecution under Iowa law, a plaintiff must prove six elements: "(1) a previous prosecution, (2) instigation or procurement thereof by defendant, (3) termination of the prosecution by an acquittal or discharge of plaintiff, (4) want of probable cause, (5) malice in bringing the prosecution on the part of the defendant, and (6) damage to plaintiff." *Yoch v. City of Cedar Rapids*, 353 N.W.2d 95, 100-01 (Iowa Ct. App. 1984) (citation omitted). "Probable cause exists where the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of

13

reasonable caution in the belief that an offense has been or is being committed." *Berkey v. City of Mingo*, No. 12-1782, 2013 WL 5743646, at *4 (Iowa Ct. App. Oct. 23, 2013) (citation omitted). If the defendants are public officials, malice must be affirmatively shown rather than simply inferred from a lack of probable cause. *Yoch*, 353 N.W.2d at 102. "It must be shown that defendant's instigation of criminal proceedings against plaintiff was primarily inspired by ill-will, hatred or other wrongful motives." *Id.* (citation omitted). This standard applies to public officials including law enforcement officers. *Id.*, at 102-03.

Plaintiff argues Westendorf, Sullivan, Chastity, and Wendling maliciously prosecuted him without probable cause. (Doc. 47, at 13). Plaintiff essentially argues that because probable cause was absent, malice should be inferred. This argument is directly contrary to established Iowa law. *See Vander Linden v. Crews*, 231 N.W.2d 904, 906 (Iowa 1975); *Yoch*, 353 N.W.2d at 102. The Court finds plaintiff has not alleged facts showing the fifth element of malicious prosecution; the malice itself. Plaintiff solely relies on the allegation that these defendants were wrong about Seroquel being a Schedule IV substance. This argument is insufficient. Plaintiff has pleaded no facts that any of these defendants harbored any sort of personal animosity or hatred towards him which caused the prosecution. Thus, the Court finds plaintiff's malicious prosecution claims fail on the merits.

### b. *Substantive Due Process*

Plaintiff asserts a Section 1983 substantive due process claim under the Fifth and Fourteenth Amendment. Plaintiff asserts Westendorf, Sullivan, Chastity, and Wendling violated his rights to due process and to be free from prosecution without probable cause. (Doc. 36, at 8–9).

Plaintiff agrees to dismissal of his Fifth Amendment claim because it is duplicative of his Fourteenth Amendment claim. (Doc. 43, at 1). Regardless of plaintiff's

14

agreement, "[t]he Fifth Amendment's Due Process Clause applies only to the federal government or federal actions[.]" *See Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009). Because plaintiff "has not alleged that the federal government or a federal action deprived" him of his due process rights here, the Fifth Amendment does not apply. *See id.*

The Fourteenth Amendment is also not an appropriate avenue of relief here. In *Albright v. Oliver*, the Supreme Court declined to recognize a substantive due process right under the Fourteenth Amendment to be free from criminal prosecution absent probable cause. 510 U.S. 266, 268 (1994). The Supreme Court noted that "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity," which were dissimilar from the petitioner's asserted right to be free from criminal prosecution absent probable cause. *Id.*, at 272. The Supreme Court ultimately concluded that the Fourth Amendment, which was more directly related to the petitioner's claim, applied in lieu of the Fourteenth Amendment. *Id.*, at 274. The Eighth Circuit Court of Appeals has repeatedly held that a Section 1983 plaintiff's claim that they were arrested or prosecuted without probable cause arises from the Fourth Amendment, not substantive due process. *See, e.g.*, *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016). Thus, whether plaintiff agrees with the law or not (Doc. 36, at 14–16), this Court is bound by precedent to find that the Fourteenth Amendment does not provide relief. Instead, the Court will review plaintiff's claim as arising under the Fourth Amendment, to the extent such a claim is asserted.

"[W]hether a malicious prosecution infringes on [Fourth Amendment] constitutional rights is undecided." *Sartin v. Comm'r of Pub. Safety of Minn.*, 535 F.2d 430, 433 (8th Cir. 1976). "The Fourth Amendment right to be free from unreasonable searches and seizures requires that arrests be based on probable cause." *Williams v. City*

15

*of Alexander*, 772 F.3d 1307, 1310 (8th Cir. 2014) (citation omitted).  Courts must assess whether arguable probable cause was present to arrest the petitioner.  *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (citations omitted).  An "officer has probable cause when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense."  *Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016) (citation and internal quotation marks omitted).  As the Eighth Circuit Court of Appeals clarified, "the issue is whether the police officers had probable cause to arrest [the person] for violating [a statute or ordinance], not whether he would have been convicted for violating [that statute or ordinance]."  *United States v. Hawkins*, 830 F.3d 742, 746 (8th Cir. 2016).

Here, plaintiff was charged with "Introducing Contraband, to wit, a Schedule IV Controlled Substance, into a Detention Facility in violation of Iowa Code [Section] 719.7." (Doc. 36, at 3). Under Section 719.7, contraband includes "[a] controlled substance or a simulated or counterfeit controlled substance, hypodermic syringe, or intoxicating beverage." A person violates Section 719.7 if the person knowingly introduces contraband into a detention facility, knowingly conveys contraband to any person in a detention facility, or knowingly makes, obtains, or possess contraband while in a detention facility. The Iowa Court of Appeals has ruled that only the Iowa legislature has the authority to create and define "the scope of contraband for purposes of the felony crimes[.]" *State v. Palmer*, No. 09-0994, 2010 WL 2383948, at *3 (Iowa Ct. App. June 16, 2010) (citation omitted). In *Palmer*, the Iowa Court of Appeals held that "contraband for a [class] D felony must fall within the types of items listen in section 719.7(1)(a) or (c)." *Id.* In 2014, the Iowa Court of Appeals reaffirmed *Palmer*'s holding in *State v. Marcott*, stating that "[w]hile a rule violation may be punished by a correctional institution, . . . [the defendant]'s rule violation is not a criminal act." No. 13-0804, 2014

16

WL 2884788, at *5 (Iowa Ct. App. June 25, 2014) (holding an inmate's lawful and valid prescription was not contraband inside a residential reentry center). In defining "controlled substance," Iowa Code Section 124.210 does not specifically include Seroquel. The lists in the statute, however, are broad and non-exclusive, covering most drugs not otherwise excepted. IOWA CODE § 124.210.

As to Westendorf, Sullivan, and Griffith, the Fourth Amendment has not been established to protect against prosecution without probable cause. Thus, the Court declines to create such a right. As demonstrated by plaintiff's other claims, the lack of a remedy under the Fourth Amendment, and the Fifth and Fourteenth Amendments as well, does not leave plaintiff without any possible recourse. Instead, it is merely an acknowledgment that such an injury is not properly remedied under these Amendments.

As to his arrest, to the extent the signing of a criminal complaint is comparable, plaintiff asserts Wendling had no probable cause to arrest him for this offense because Seroquel is not a controlled substance and, thus, it was not contraband defined by Iowa Code Section 719.7(1). (Doc. 36, at 4, 9). Given the broad, non-exclusive, and technical definition of a controlled substance in Iowa Code Section 124.210, Wendling had at least arguable probable cause to believe that Seroquel—a prescription drug—constituted a controlled substance and that plaintiff's possession of it inside a detention facility was unlawful such that plaintiff's arrest was not unreasonable. *See Hawkins*, 830 F.3d 742, 746. That Wendling was ultimately wrong does not mitigate his at least arguable probable cause at the time he signed the criminal complaint. In short, the facts in the complaint do not plausibly support a claim that Wendling lacked arguable probable cause. Thus, the Court finds plaintiff's substantive due process claim fails on the merits both as a matter of law and factual insufficiency.

### c. Abuse of Process

Under Iowa law, "[a]buse of process is the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed." *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001). (citation and internal quotation marks omitted). A plaintiff must show some use of a legal process in an improper or unauthorized manner which resulted in damages. *Stew-Mc Dev., Inc. v. Fisher*, 770 N.W.2d 839, 849 (Iowa 2009). Abuse of process can occur even though there is probable cause to bring the action and the original action resolves in favor of the plaintiff if the primary purpose of the action was nevertheless improper. *Van Stelton v. Van Stelton*, 994 F. Supp. 2d 986, 993 (N.D. Iowa 2014). "Abuse of process claims routinely fail under the high burden [courts] require for the second element." *Thomas v. Marion Cty.*, 652 N.W.2d 183, 186 (Iowa 2002). A plaintiff must show "the defendant used the legal process *primarily* for an impermissible or illegal motive." *Van Stelton*, 994 F. Supp. 2d at 992 (citation omitted) (emphasis in the original). This is typically shown through "an attempt to secure from another some collateral advantage not properly includable in the process itself. This amounts to a form of extortion in which a lawfully used process is perverted to an unlawful use." *Id.*, at 993 (internal citations and quotation marks omitted).

Plaintiff asserts that "[u]sing a complaint and then a trial information to bring someone into [the criminal court system] for a crime that does not exist is not using the process for a purpose for which it was designed and intended." (Doc. 47, at 17). Plaintiff argues "the criminal court system is not designed to allow prosecutors and law enforcement to rewrite criminal law." (*Id.*).

Plaintiff has pleaded no facts to support a showing that these defendants used the legal process primarily for an impermissible or illegal motive. There is no indication whatsoever that any defendant maliciously intended, primarily or secondarily, to harm

plaintiff in charging him with the underlying offense here.  Again, plaintiff was not charged with some imaginary offense in order to imprison him.  Rather, he was charged with a codified crime of which he was ultimately found not guilty.  Nothing about the circumstances here indicate that plaintiff was charged with that crime for some unidentified nefarious purpose.  Thus, the Court finds plaintiff's abuse of process claim fails on the merits.

### d. *IIED*

For the same reasons discussed above as to Skinner, plaintiff has also not sufficiently stated an IIED claim against the other defendants.  Nothing about plaintiff's prosecution or imprisonment constitutes extreme and outrageous conduct.  That plaintiff's guilty plea was ultimately set aside does not render defendants' conduct tortious.  Thus, the Court finds plaintiff's IIED claim fails on the merits as to the remaining defendants.

Thus, the Court finds plaintiff has failed to state any claim against Westendorf, Sullivan, Griffith, and Wendling upon which relief can be granted and therefore **grants** defendants' motion to dismiss as to these defendants.  Because the Court found plaintiff failed to state a claim against Skinner based on qualified immunity and the merits, against Westendorf, Sullivan, and Griffith based on prosecutorial immunity and the merits, and Wendling based on the merits, Thompson is the only remaining defendant.

### e. *False Imprisonment and Cruel and Unusual Punishment*

Plaintiff's claims against Thompson fail for the same reasons discussed as to Skinner.  Plaintiff was imprisoned lawfully.  He alleges no punishment beyond his mere imprisonment.  Plaintiff's claims, therefore, fail on the merits.

Thus, the Court finds plaintiff has failed to state any claim against Thompson upon which relief can be granted and therefore **grants** defendants' motion to dismiss as to Thompson.

19

## V. CONCLUSION

For these reasons, all of plaintiff's claims against all defendants fail to state a claim upon which relief can be granted. Thus, the Court **grants** both motions to dismiss (Docs. 38 & 40) and this case is **dismissed with prejudice**.

**IT IS SO ORDERED** this 16th day of July, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa